# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

HIGINIO BARRERA,

    Petitioner,

vs.

BRIAN WILLIAMS, SR., et al.

    Respondents.

Case No. 2:15-cv-01515-JCM-GWF

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 7), respondents' motion to dismiss (ECF No. 10), petitioner's opposition (ECF No. 18), and respondents' reply (ECF No. 19). The court agrees with respondents that ground 7 is procedurally defaulted and that petitioner has not exhausted his state-court remedies for grounds 1 through 6 and ground 8. The court grants the motion to dismiss.

    After a jury trial in state district court, petitioner was convicted of battery constituting domestic violence, battery with the use of a deadly weapon constituting domestic violence, and burglary while in possession of a deadly weapon. Ex. 27 (ECF No. 13-7). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 43 (ECF No. 13-23). Petitioner then filed a post-conviction habeas corpus petition in the state district court. Ex. 50 (ECF No. 13-30). The state district court denied the petition. Ex. 62 (ECF No. 13-42). Petitioner appealed, and the Nevada Court of Appeals affirmed. Ex. 92 (ECF No. 14-17).

    Petitioner then commenced this action. The petition contains nine grounds. Respondents present procedural defenses for grounds 1 through 8.

1    Respondents first argue that petitioner has not exhausted his available state-court remedies for grounds 1 through 6 and ground 8.  Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court.  28 U.S.C. § 2254(b).  To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground.  See Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6 (1982).

Grounds 1 through 6 and ground 8 are claims of ineffective assistance of trial counsel.  Respondents are correct that petitioner alleges facts in the current federal petition that he did not allege in his state habeas corpus petition.  Motion, at 4-5 (ECF No. 10).  The 22 grounds of ineffective assistance of trial counsel that petitioner presented in his state habeas corpus petition all lack any allegations of fact.  See Ex. 50, at 12-32 (ECF No. 13-30, at 13-34).  Consequently, grounds 1 through 6 and ground 8 are unexhausted.

Petitioner does not argue specifically that these grounds are exhausted.  However, he states that on May 19, 2014, he tried to mail a post-conviction habeas corpus petition to the state district court, which contained the factual allegations, but that the prison officials did not mail it to the state district court.  Petitioner then mailed, on September 4, 2014, the post-conviction petition that was considered by the state district court, but which lacked any factual allegations.  The state district court received that petition on November 13, 2014.  Opposition, at 2-4 (ECF No. 18).  If petitioner is using this statement as an argument to excuse the exhaustion requirement, then the court is not persuaded.  First, regardless of what happened in the state district court, the facts that petitioner presents in his federal habeas corpus petition were not presented to the state courts.  Second, the court is not persuaded by petitioner's allegation that he mailed what became the operative state habeas corpus petition solely to toll the statute of limitations.  Under state law, petitioner had one year from the issuance of the remittitur on direct appeal to file a post-conviction habeas corpus petition.  Nev. Rev. Stat. § 34.726(1).  The remittitur issued on January 13, 2014.  Ex. 44 (ECF No.

13-24).¹  The state one-year period would have expired on January 13, 2015.  If petitioner did try to send an earlier post-conviction petition to the state court without success, then he still had plenty of time to reconstruct a full post-conviction habeas corpus petition to be considered by the state courts.

Respondents next argue that ground 7 is procedurally defaulted.  Ground 7 is a claim that the state district court openly favored the prosecution.  State ground 36 is the corresponding ground in the state habeas corpus proceedings.  Ex. 50, at 47 (ECF No. 13-30, at 48).  The state district court determined that the ground was procedurally defaulted under Nev. Rev. Stat. § 34.810 because petitioner should have raised it on direct appeal.  Ex. 62, at 5-6 (ECF No. 13-42, at 6-7).  The Nevada Court of Appeals affirmed for the same reason.  Ex. 92, at 2-3 (ECF No. 14-17, at 3-4).

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  The reason for dismissal upon which the Nevada Supreme Court relied in this case is an adequate and independent state rule.  Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003) (discussing Nev. Rev. Stat. § 34.810).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule.  Carrier, 477 U.S. at 488.

To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

---

¹The starting dates of the state and the federal one-year periods are different.  In petitioner's case, the federal one-year period of 28 U.S.C. § 2244(d)(1) would have started when the time to petition the Supreme Court of the United States for a writ of certiorari expired, on March 17, 2014.  The time that petitioner spent on his state post-conviction habeas corpus petition was tolled.  28 U.S.C. § 2244(d)(2).

-3-

infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis in original).

Petitioner also can bypass a procedural default by demonstrating that he is actually innocent. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

Petitioner argues that the prosecution failed to present the results of a DNA test and that trial counsel failed to move for the prosecution to disclose the results. The court is not persuaded. On direct appeal, the Nevada Supreme Court summarized the evidence presented at trial:

> The victim testified that Barrera, her boyfriend at the time of the offense, believed that she was cheating on him. The victim's son-in-law testified that Barrera told him that he believed she was cheating on him and that "[h]is friends were basically motivating him to kill her." The son-in-law repeated a story Barrera told him about a Cuban man who murdered his wife because she was cheating on him and "that's what Cubans do; they don't . . . allow themselves to be humiliated." The victim testified that on the night of the attack, Barrera came to her apartment wearing white cloth gloves, put a rope around her neck, began choking her, and stated that he was going to kill her. The victim testified that Barrera stabbed her with a knife taken from her kitchen. Without objection, the State noted for the record that the victim pointed to the scar from the stabbing on "the lower portion of her neck; the upper portion of the chest." The victim also cut her hand on the knife while trying to defend herself. Barrera, however, testified that the victim attacked him with a knife and cut herself in the process. At trial, the victim identified the rope and knife used in the attack, and the white gloves Barrera was wearing at the time.

Ex. 43, at 2 (ECF No. 13-23, at 3). The court is not convinced that investigators actually conducted a DNA test. In the defense's closing argument, trial counsel stated, "When the State has the burden of proving somebody as guilty of serious crimes, we have no DNA. We have no fingerprints. We have—we have a crime scene analyst who indicates that it's not her responsibility to determine what tests are done on evidence." Ex. 22, at 30-31 (ECF No. 13-2, at 31-32). On rebuttal, the prosecutor stated, "Let's talk briefly about the [crime scene analyst] Herring, the fact that there was no DNA or no fingerprints found in the home. Well, I submit to you that the defendant lived in that apartment. The defendant lived in that apartment for a while, and both Maxima [the victim] and the defendant are both consistent at least that they're both in the apartment at that time. Why do we need fingerprints or DNA? Those prove identity. We know who was there. We know who the parties

are.  It's what happened in the residence that's important." Id. at 44-45 (ECF No. 13-2, at 45-46).
Defense counsel was trying to argue that the investigation was sloppy, but petitioner seems to be
using that argument in support of his own argument that defense counsel failed to stop the
concealment of evidence.  The court disagrees.  Furthermore, in the actual-innocence analysis, a
DNA test would not have made a difference.  Neither identity nor the victim's wounds were issues,
because both the prosecution and petitioner agreed that petitioner and the victim were in a struggle
and that the victim was cut.  The intent to commit the acts charged as the two counts of battery and
the count of burglary were issues, and DNA evidence could neither prove nor disprove intent.

      The court agrees with respondents that the loss of petitioner's first state habeas corpus petition is not cause to excuse the procedural default of ground 7.  Even if the first state habeas corpus petition was filed, the claim corresponding to ground 7 would have been barred by § 34.810 because petitioner needed to raise it on direct appeal.

      The petition (ECF No. 7) is mixed, containing both claims exhausted in state court and claims not exhausted in state court, and it is subject to dismissal.  See Rose v. Lundy, 455 U.S. 509, 521-22 (1982); Szeto v. Rushen, 709 F.2d 1340, 1341 (9th Cir. 1983).

      Petitioner has filed an application to proceed in forma pauperis (ECF No. 27).  The application is moot because the court already has granted petitioner leave to proceed in forma pauperis.  See Order (ECF No. 6).

      IT IS THEREFORE ORDERED that respondents' motion to dismiss (ECF No. 10) is **GRANTED** in part.  Grounds 1 through 6 and ground 8 are unexhausted.  Ground 7 is **DISMISSED** as procedurally defaulted.

      IT IS FURTHER ORDERED that petitioner shall have thirty (30) days from the date of entry of this order to file a motion for dismissal without prejudice of the entire petition, for partial dismissal of grounds 1 through 6 and ground 8, or for other appropriate relief.  If petitioner moves to dismiss the entire petition, then the court makes no assurances about any possible state-law procedural bars or the timeliness of a subsequently filed federal habeas corpus petition.  Failure to comply with this order will result in the dismissal of this action.

IT IS FURTHER ORDERED that petitioner's application to proceed <u>in forma pauperis</u> (ECF No. 27) is **DENIED** as moot.

DATED: November 9, 2016.

_____
JAMES C. MAHAN
United States District Judge